**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DUKE UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV701 |
| | ) | |
| UNIVERSAL PRODUCTS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the undersigned United States Magistrate Judge on Defendant's Motion to Stay Proceedings (Docket Entry 9). (See Docket Entry dated Feb. 25, 2014.) For the reasons that follow, the Motion will be denied.[1]

## I.  Background

The Complaint identifies Plaintiff as "a private nonprofit research university that provides graduate, undergraduate and other educational programs in North Carolina and at other locations around the world and that, among many other endeavors, fields

---

[1] The undersigned Magistrate Judge will enter an order because pretrial motions of this sort do not appear in the list of matters requiring a recommendation, see 28 U.S.C. § 636(b)(1)(A) & (B), and because federal appellate courts uniformly have approved disposition of such motions by Magistrate Judges, see S.E.C. v. CMKM Diamonds, Inc., 729 F.3d 1248, 1259-60 (9th Cir. 2013); PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010); see also Virgin Islands Water and Power Auth. v. General Elec. Int'l Inc., ___ F. App'x ___, ___, 2014 WL 1045414, at *2 (3d Cir. Mar. 19, 2014) (unpublished) (finding Magistrate Judge authorized to rule on motion to compel arbitration, effectively staying the case).

nationally prominent Division 1 athletic teams" (Docket Entry 1, ¶ 7) and Defendant as "a corporation of the State of Maryland" (id., ¶ 3) that manufactures, among other things, automobile cooling systems leak sealants (see id., ¶ 17). Plaintiff brings this suit for trademark infringement and related claims against Defendant for unauthorized use of Plaintiff's registered marks. (Id., ¶¶ 1, 27-64.)

According to the Complaint, Plaintiff "owns many marks consisting of the terms BLUE DEVIL and BLUE DEVILS and variants thereof, as well as marks consisting in whole or substantial part of the terms BLUE and DEVIL, and design marks including its famous BLUE DEVIL mascot." (Id., ¶ 8.) Plaintiff reports using said marks since approximately 1923 (id., ¶ 9) and possessing at least 13 United States Trademark Registrations for them (id., ¶ 11). Further, the Complaint states that Plaintiff sells and/or licenses a wide variety of products bearing its marks, including automotive accessories, both at retail premises and on the Internet, and provides "educational and entertainment services related to motor vehicle engineering and racing, including its Motorsports team, founded in 1996, which utilizes BLUE DEVIL Marks on its race cars and in other ways." (Id., ¶ 14.)

The Complaint alleges that, in 2009, Defendant "applied to register the unitary word "BLUEDEVIL" as a trademark for automobile cooling system leak sealants . . . ." (Id., ¶ 17.) Plaintiff

allegedly entered into discussions with Defendant and ultimately agreed to forego any opposition of Defendant's application in exchange for restrictions on the use of Defendant's mark. (Id., ¶ 19.) As a result, Defendant owns a United States Trademark Registration for that mark. (Id.)

According to the Complaint, "[i]n 2011, Defendant filed two new trademark applications for BLUEDEVIL PRODUCTS for 'wholesale and retail store services and on-line retail and wholesale store services featuring automotive accessories and automotive leak sealants, namely, air conditioning leak sealants, cooling system leak sealants, oil system leak sealants, power steering leak sealants, hydraulic leak sealants, head gasket leak sealant, windshield washer fluid, fuel additives for gas and diesel engines, radiator flush, and air conditioning coolant and coolant booster.'" (Id., ¶ 20 (citation omitted).) The Complaint alleges that these applications violate the agreement between Plaintiff and Defendant concerning Defendant's original mark and that Defendant's proposed marks infringe upon Plaintiff's registered marks. (Id., ¶¶ 24-26.)

In light of the foregoing facts, Plaintiff's Complaint asserts the following claims: breach of contract (id., ¶¶ 27-31); trademark infringement (id., ¶¶ 32-46); false designation of origin, false descriptions, false representation of association, dilution (id., ¶¶ 47-52); trademark infringement (common law) (id.,

¶¶ 53-59); and unfair and deceptive trade practices (id., ¶¶ 60-64).

Prior to commencing this action, Plaintiff filed an Opposition to Defendant's 2011 trademark registration applications before the Trademark Trial and Appeal Board ("TTAB"). (See Docket Entry 13-1.) In its instant Motion (Docket Entry 9), Defendant "requests that this action be stayed pending the outcome of the Opposition action before the TTAB." (Docket Entry 10 at 1.)[2] Plaintiff responded (Docket Entry 13) and Defendant replied (Docket Entry 14).

## II. Discussion

Defendant's instant Motion focuses on the doctrine of primary jurisdiction to support its request for a stay. (See Docket Entry 10 at 2-7.) "The doctrine of primary jurisdiction allows a court to stay or dismiss a case without prejudice to give the parties a reasonable opportunity to seek an administrative ruling on 'some issue within the special competence of an administrative agency.'" Sprint Commc'ns Co., L.P. v. NTELOS Tel. Inc., No. 5:11cv00082, 2012 WL 3255592, at *10 (W.D. Va. Aug. 7, 2012) (unpublished)

---

[2] Within the body of its brief in support of the instant Motion, Defendant also requests an extension of time to answer the Complaint. (Docket Entry 10 at 1.) This request does not conform to this Court's Local Rules. See M.D.N.C. LR 7.3(a) ("Each motion shall be set out in a separate pleading."). Moreover, Defendant filed its Answer to the Complaint (Docket Entry 11) on the same day it filed the instant request for extension of time. As Plaintiff acknowledges (see Docket Entry 13 at 1 n.1), that filing, which falls within the time the Court gave Defendant to answer (see Text Order dated Dec. 3, 2013), renders Defendant's extension request moot.

(quoting <u>Reiter v. Cooper</u>, 507 U.S. 258, 268 (1993)). The doctrine, in part, "is intended to recognize that, with respect to certain matters, 'the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim." <u>Goya Foods, Inc. v. Tropicana Prods., Inc.</u>, 846 F.2d 848, 851 (2d Cir. 1988) (quoting <u>United States v. Western Pac. R.R. Co.</u>, 352 U.S. 59, 64 (1956)).

The First, Second, and Ninth Circuits have addressed the applicability of primary jurisdiction to the realm of trademark law and determined that, for the most part, the doctrine does not justify a stay of federal court proceedings pending completion of a registration proceeding before the TTAB. <u>See</u> <u>Rhoades v. Avon Prods., Inc.</u>, 504 F.3d 1151, 1165 (9th Cir. 2007); <u>PHC, Inc. v. Pioneer Healthcare, Inc.</u>, 75 F.3d 75, 80-81 (1st Cir. 1996); <u>Goya Foods</u>, 846 F.2d at 852-54. The first of those cases involved a party seeking a declaration that it had not infringed on another's marks and requesting cancellation of the other party's registration. <u>Goya Foods</u>, 846 F.2d at 850. The Second Circuit, recognizing at the time that neither the United States Supreme Court nor any of the Courts of Appeal had addressed the impact of primary jurisdiction in trademark cases, began with a discussion of the process of trademark registration:

> The Lanham Act provides for federal trademark registration and authorizes the PTO [Patent and Trademark Office] to refuse registrations of a mark that "so resembles a mark registered in the [PTO] or a mark or

> trade name previously used in the United States by
> another and not abandoned, as to be likely, when applied
> to the goods of the applicant, to cause confusion, or to
> cause mistake, or the deceive . . . ." 15 U.S.C.
> § 1052(d). An opposition to a registration may be
> initiated by "[a]ny person who believes that he would be
> damaged by the registration of a mark," 15 U.S.C. § 1063,
> and the TTAB is established "to determine and decide the
> respective rights of registration" in contested
> proceedings, 15 U.S.C. § 1067. An applicant for
> registration or party to an opposition or cancellation
> proceedings disappointed with the decision of the TTAB
> may either appeal the decision to the United States Court
> of Appeals for the Federal Circuit, 15 U.S.C. § 1071(a)
> (Supp. IV 1986), or bring a civil action in a United
> States District Court, 15 U.S.C. § 1071(b).

Id. at 852 (alterations in original).

The court then noted that the provision allowing a disappointed party to bring a civil action in a District Court, 15 U.S.C. § 1071(b), "is not, strictly speaking, an 'appeal' at all, but an independent judicial proceeding provided as an alternative to a direct appeal," and that, although the determination of the TTAB "is considered controlling in the civil action on issues of fact unless the contrary is established by testimony which in character and amount carries thorough conviction, . . . the civil action before the District Court is intended to be a trial *de novo*." Id. at 852-53 (internal quotation marks and citations omitted). Based on the foregoing considerations, the court decided that "[t]his scheme of 'review' is thus some distance from the traditional arena of primary jurisdiction, a doctrine *allocating the law-making power* over certain aspects of commercial relations."

Id. at 853 (emphasis in original) (internal quotation marks omitted).

In that regard, the court observed that, under the Lanham Act, "a certificate of registration . . . is prima facie evidence of the validity of the registration, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce on the goods or services specified therein," but that, because the presumption remains rebuttable, "by obtaining (or resisting cancellation of) a federal registration a party does not significantly affect the course of an infringement action." Id. at 854 (internal quotation marks omitted). Similarly, if a party fails to obtain the desired registration, such failure "would establish no legally compelled adverse consequences" against said party in an infringement action. Id. Ultimately, the Second Circuit concluded that, although a stay may be warranted where "a district court action involves only the issue of whether a mark is entitled to registration," id. at 853, in a suit that concerns infringement, "the interest in prompt adjudication far outweighs the value of having the views of the PTO," id. at 853-54. Accord Homemakers, Inc. v. Chicago Home for the Friendless, 313 F. Supp. 1087 (N.D. Ill. 1970) (dismissing as premature action for declaratory judgment that plaintiff's trademark was duly registered and blocking cancellation action), aff'd, 169 U.S.P.Q. 262, 1971 WL 16689 (7th Cir. 1971).

The First Circuit, considering a similar case in which the plaintiff sought declaratory judgment that its own mark had not infringed upon the rights of another and that it possessed the right to maintain its registration of said mark, noted two factors it found compelling in denying a request for a stay. PHC, Inc., 75 F.3d at 78, 80. First, similar to the Second Circuit's discussion in Goya Foods, the court noted that "the [TTAB] is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard." Id. at 80. It also acknowledged the availability of a de novo proceeding in the district court, as well as the availability of suits in federal court without any prior resort to the TTAB. Id. Second, the court stated that, "at least where an infringement claim is involved - whether directly asserted by an 'owner' or challenged in a declaratory action - there is often some urgency." Id. Moreover, "the [TTAB] cannot give relief for an infringement claim, either injunctive or by way of damages." Id.

The court, in adopting the same conclusion as the Second Circuit, went on to observe that "[t]he Second Circuit did not decide whether, given that the infringement claim was to be heard by the district court at once, a companion declaratory claim addressed to the validity of a federally registered mark should also be heard despite the pendency of the [TTAB] proceeding." Id. It concluded that "both claims should be heard if this course is

more efficient; otherwise, not." Id. at 81. It explained that, where an infringement action will proceed, "it normally makes sense for the court to resolve a companion validity claim at the same time, *if* the issues underlying the two claims overlap to an extent that makes this course sensible." Id. In a similar case, the Ninth Circuit adopted the same standard of efficiency in such circumstances. Rhoades, 504 F.3d at 1165.

In the instant case, Defendant asks this Court to stay the action pending a resolution before the TTAB because the TTAB's decision "will ultimately be a material aid in resolving the pending litigation . . . ." (Docket Entry 10 at 4.) Defendant also argues that "staying the federal litigation would permit the use of discovery already conducted by the parties in the TTAB matter without subjecting them to duplicate discovery in the federal litigation or further delaying the resolution of their issues." (Id. at 5.) Defendant cites several older district court cases in support of its argument (id. at 4-5), but the Court does not find such authority compelling in this context. The sole case cited by Defendant that deals with the question of stay pending existing TTAB proceedings involved claims "seeking injunctive relief which would grant plaintiff the exclusive use of the name [at issue]." Driving Force, Inc. v. Manpower, Inc., 498 F. Supp. 21, 22 (E.D. Pa. 1980). That circumstance appears to represent the type of case (unlike this case) which the First and Second Circuits

contemplated as the exception to the general inapplicability of primary jurisdiction in trademark suits. See PHC, Inc., 75 F.3d at 81 ("If no infringement claim were made in the district court but only a claim that a federal registration was or was not valid, a good argument might exist . . . for awaiting the completion of any pending [TTAB] proceeding addressed to the mark's validity."); Goya Foods, 846 F.2d at 853 ("If a district court action involves only the issue of whether a mark is entitled to registration . . . the doctrine of primary jurisdiction might well be applicable . . . ."). Moreover, as Plaintiff points out (Docket Entry 13 at 10), the court in Driving Force later refused to continue the stay pending appeal of the TTAB decision, recognizing the limited impact of the decision and the fact that the issues before the court remained broader than the matters before the TTAB and its appellate body. The Driving Force, Inc. v. Manpower, Inc., 538 F. Supp. 57, 59-60 (E.D. Pa. 1982).

Defendant also cites two cases involving patent disputes in which courts stayed the claims pending resolution of proceedings before the PTO to resolve contests over priority of invention. (Docket Entry 10 at 4 (citing American Tel. & Tel. Co. v. Milgo Elec. Corp., 416 F. Supp. 951 (S.D.N.Y. 1976); Research Corp. v. Radio Corp. of Am., 181 F. Supp. 709 (D. Del. 1960)).) These cases do not address TTAB proceedings. Moreover, those cases and Driving Force all predate the above-discussed First, Second, and Ninth

Circuit cases. This Court finds those appellate decisions persuasive in the context of evaluating the merits of a stay pending resolution of TTAB proceedings, particularly as to cases involving circumstances of the sort present here.

Most notably, the instant case involves claims that the TTAB cannot directly resolve, including damages claims for various types of infringement, as well as breach of contract. (See Docket Entry 1, ¶¶ 27-64.) Where "a district court suit concerns infringement, the interest in prompt adjudication far outweighs the value of having the views of the [TTAB]." Goya Foods, 846 F.2d at 853-54. Arguably, however, the instant case may present the type of situation contemplated by the Second Circuit, where a "declaratory claim addressed to the validity of a federally registered mark" accompanies an infringement claim. PHC, Inc., 75 F.3d at 80-81. Plaintiff's Complaint does not ask the Court to rule on the validity of either its own registered marks or Defendants registered or proposed marks. (See Docket Entry 1 at 19.) However, it does request that the Court "[p]ermanently enjoin[] Defendant . . . from infringing Plaintiff's BLUE DEVIL Marks." (Id.) To the extent this demand addresses the question of registration validity, this Court will nevertheless deny any stay because allowing all of the claims to proceed together represents the more efficient course. See Rhoades, 504 F.3d at 1165; PHC, Inc., 75 F.3d at 81.

Defendant argues that the following factors demonstrate that staying this action best serves the interest in efficiency:

(1) the TTAB's determination "will at least be a material aid in ultimately deciding the issues in this federal litigation case" (Docket Entry 10 at 4);

(2) the proceedings before the TTAB commenced one year before the instant case, the discovery phase has concluded in that proceeding, and "the findings of fact already performed by the TTAB can be utilized by this Court, which avoids the necessity for further findings and prevents duplicated findings of fact" (id. at 4-5);

(3) "it would prejudice the parties in this case to have to litigate and defend similar or identical claims in multiple forums due to the risk of inconsistent rulings" (id. at 5); and

(4) no evidence exists of prejudice to Plaintiff should the Court stay the instant proceedings (id. at 7).

Plaintiff, in turn, contends that the opposition proceeding before the TTAB "is based on [Defendant's] 'intent to use' the marks sought to be registered," whereas the instant litigation "focuses on what Defendant has actually done, is continuing to do, and likely will continue to do unless forced to stop . . . ." (Docket Entry 13 at 2.)  It further argues that the claims in the instant case greatly exceed the scope of the proceedings before the TTAB (id. at 9) and that, should the Court stay the instant case

12

until the conclusion of the TTAB proceedings, the TTAB result would not simplify or shorten the instant case (<u>id.</u> at 11-12). Finally, Plaintiff states that "[t]he only benefit from delay would be to Defendant, which would increase its toehold in the marketplace, increasing public confusion and diluting the recognition afforded [Plaintiff's] BLUE DEVIL marks." (<u>Id.</u> at 13.)

On balance, the potential harm to Plaintiff from continued infringement outweighs any prejudice to Defendant that might arise from simultaneous proceedings. Moreover, the result of the TTAB proceeding would not create any legally binding effect on the instant case. <u>See</u> <u>Goya Foods</u>, 846 F.2d at 854. Finally, to the extent the claims for injunctive relief before this Court address the validity of any registration, they appear insufficiently distinct from the accompanying infringement claims. <u>See</u> <u>PHC, Inc.</u>, 75 F.3d at 81 ("[I]t normally makes sense for the court to resolve a companion validity claim at the same time [as an infringement claim], *if* the issues underlying the two claims overlap to an extent that makes this course sensible.").[3]

---

[3]     Defendant briefly argues that the Court should exercise the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" (Docket Entry 10 at 2) to stay this proceeding for the following reasons:

> The claims in this case are currently before another tribunal and have been proceeding there for over a year. It would be a waste of resources for this Honorable Court to adjudicate the same issues as are currently pending before the TTAB; in fact, the findings of fact by the

### III.  Conclusion

No compelling reason exists to stay this action pending resolution of the proceedings currently before the TTAB.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Stay (Docket Entry 9) is **DENIED**.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

May 6, 2014

---

TTAB in the pending proceeding would reduce the need for additional findings of fact by this [C]ourt and prevent duplicated procedures that would waste the [C]ourt's time and resources.  Furthermore, the parties in the TTAB proceeding have already conducted discovery.  Staying the federal litigation would permit the use of discovery already conducted by the parties in the TTAB matter without subjecting them to addition costs for repeated discovery in the federal litigation.  The parties have already invested considerable time and costs into the TTAB proceedings and are moving forward with settlement negotiations.  To add the expense and resources needed for federal litigation amidst the current proceedings does not weigh in the interest of justice and prejudices the parties.

(Id. at 3-4.) For the same basic reasons previously discussed, the Court rejects Defendant's foregoing argument.  Most significantly, Defendant's statement that "[t]he claims in this case are currently before another tribunal" does not accurately reflect the actual circumstances (detailed above).  In addition, Defendant's arguments concerning discovery appear counterintuitive; if the parties have completed discovery before the TTAB, reproducing that discovery for this proceeding presumably would not impose significant costs.  In sum, Defendant offers no "'clear and convincing circumstances outweighing potential harm to the party against whom [the stay] is operative.'"  (Id. at 2 (quoting Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983)).)